## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>vs.<br><br>BRUCE JEREMIAH,<br>　　　Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

12-cr-180-M-PAS-2

## MEMORANDUM AND ORDER

Defendant Bruce Jeremiah filed the following four motions with accompanying memoranda in August of 2013:

1. Motion to Return Non-Warrant Items (ECF Nos. 68, 68-1);
2. Motion to Suppress and Return Items from Whitewood Drive, Cranston (ECF Nos. 70, 70-1);
3. Motion to Suppress and Return Items from Conduit Street (ECF Nos. 71, 71-1); and
4. Motion to Replevin Unconstitutionally Seized Microgen Bank Funds.  (ECF Nos. 72, 72-1.)

This Court will address the first three motions collectively and then turn to the fourth.

### I.    Background

Mr. Jeremiah's motions to suppress and his motion to return non-warrant items all arise from two searches:  one search was conducted at Mr. Jeremiah's place of business on Conduit Street in Central Falls, Rhode Island; and the other search was conducted at Mr. Jeremiah's residence at 35 Whitewood Drive in Cranston, Rhode Island.  Prior to both searches, two search and seizure warrants issued.  One warrant authorized the search of 13, 25, and 31 Conduit Street, Central Falls, Rhode Island (hereinafter "Conduit Street Warrant").  (ECF Nos. 5, 5-1 in 12-mj-336-LDA.)  The second warrant authorized the search of 35 Whitewood Drive, Cranston, Rhode Island (hereinafter "Whitewood Drive Warrant").  (ECF Nos. 5, 5-1 in 12-mj-335-LDA.)  Each

warrant contained two attachments.  Attachment A for each warrant describes the nature of the premises to be searched.  (ECF No. 5-1 at 30 in 12-mj-335-LDA; ECF No. 5-1 at 35 in 12-mj-336-LDA.)  Attachment B for each warrant describes the items/things to be searched and/or seized.  (ECF No. 5-1 at 31-35 in 12-mj-335-LDA; ECF No. 5-1 at 37-41 in 12-mj-336-LDA.)

In his Motions to Suppress and Motion to Return Non-Warrant Items, Mr. Jeremiah argues that the searches and seizures conducted pursuant to both warrants were unreasonable and thus in violation of the Fourth Amendment.  (ECF Nos. 68, 70, 71.)  Specifically, Mr. Jeremiah argues that both warrants lacked the particularity required by the Fourth Amendment.  *Id.* Additionally, Mr. Jeremiah argues for return of certain items "not included in" the Whitewood Drive and Conduit Street Warrants.  (ECF No. 68.)  In response to Mr. Jeremiah's Motions to Suppress, the United States filed an Omnibus Memorandum of Law in Opposition to Mr. Jeremiah's Motions to Suppress.  (ECF Nos. 78-1, 79-1).  This Court first will discuss the applicable law and then will address the arguments raised by Mr. Jeremiah.  After addressing these three Motions, this Court will turn to the Motion to Replevin Unconstitutionally Seized Microgen Bank Funds.  (ECF No. 72.)

## II.   Law

The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The purpose of the Fourth Amendment's particularity requirement is both to ensure that "nothing is left to the discretion of the officer executing the warrant" and to avoid the wrongful "seizure of one thing under a warrant describing another."  *Marron v. United States*, 275 U.S. 192, 196 (1927). Further, without a particular description of the items to be searched and/or seized, "there can be no written assurance that the Magistrate actually found probable cause to search for . . . every

item mentioned in the affidavit." *Groh v. Ramirez*, 540 U.S. 551, 560 (2004). As to each place to be searched and each item to be seized, a warrant must be based upon probable cause. *See generally Draper v. United States*, 358 U.S. 307, 313 (1959) (explaining that probable cause exists where an officer has "reasonably trustworthy information" of facts and circumstances that would "warrant a [person] of reasonable caution" to believe that an offense "has been or is being committed"); *see also Carroll v. United States,* 267 U.S. 132, 162 (1925). Warrants are to be read by courts in a "commonsense" rather than a "hypertechnical" manner. *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

If a search warrant does not meet the Fourth Amendment particularity requirement – either with respect to the place to be searched or the things to be searched or seized – a search or seizure conducted pursuant to that warrant will be presumed invalid: "the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant." *Groh*, 540 U.S. at 559. This presumption is one that is "uniformly applied" and holds that a search or seizure is unconstitutional if it "fails to conform" to the Fourth Amendment's particularity requirement. *Id.* The remedy for a violation of the Fourth Amendment is the exclusionary rule, which generally requires the suppression of evidence illegally obtained by authorities. *See, e.g., Mapp v. Ohio,* 367 U.S. 643, 655 (1961).

Courts considering whether a warrant meets the Fourth Amendment particularity requirement will address the following: first, "the degree to which the evidence presented . . . establishes reason to believe that . . . similar contraband is present on the premises to be searched," and second, "the extent to which, in view of the possibilities, the warrant distinguishes or provides the executing agents with criteria for distinguishing the contraband from the rest of the individual's possessions." *United States v. Morris*, 977 F.2d 677, 681 (1st

3

Cir. 1992) (citing *United States v. Klein*, 565 F.2d 183 (1st Cir. 1977)).  In assessing whether a description of the location to be searched is sufficiently particular, courts ask "whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'"  *United States v. Bonner*, 808 F.2d 864, 866 (1st Cir. 1986) (quoting *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985)) (the search warrant at issue omitted the number of the house to be searched, but because the warrant included an adequate physical description of the location to be searched and since there was "no risk" that searching officials would "stumble into the wrong house," the warrant was upheld); *see also United States v. Mousli*, 511 F.3d 7, 12-13 (1st Cir. 2007) (upholding a search warrant that incorrectly described a residence as containing only one unit because the officers did not know that the property contained multiple units and because the warrant relied on "as much information" as searching officers were able to gather); *United States v. Woodbury*, 511 F.3d 93, 95-96 (1st Cir. 2007) (upholding a warrant to search a defendant's residence where the street address was described by one name in the warrant and by a different name in the supporting affidavit).

With respect to seizure of business records under the Fourth Amendment, the First Circuit has employed the rule that "where there is probable cause to find that there exists a pervasive scheme to defraud, all the business records of an enterprise may be seized, if they are . . . accurately described so that the executing officers have no need to exercise their own judgment as to what should be seized." *United States v. Brien*, 617 F.2d 299, 309 (1st Cir. 1980).  When a warrant seeks the seizure of business records maintained in an individual's home, an "all records" search under *Brien* will be allowed only when the records to be seized are "plausibly related to the crime" as set forth in the search warrant. *United States v. Ostrowski*,

822 F.Supp.2d 66, 71 (D.Mass. 2011) (citing *United States v. Timpani*, 665 F.2d 1, 4-5 (1st Cir. 1981)). However, "when an individual's allegedly fraudulent business activities are centered in his home[,] . . . the 'all records' doctrine must be applied with caution" and "extraordinary proof" is required to show that a person's life is so "consumed" by the crime charged so as to warrant subjecting "all records found in the home" to seizure. *United States v. Falon*, 959 F.2d 1143, 1148 (1st Cir. 1992). In *Ostrowski*, the court was satisfied that a warrant seeking "nearly all" of the defendant's business or financial records met the Fourth Amendment particularity requirement because the warrant limited the items for seizure to those items "that could have been related" to the crimes charged. 822 F.Supp.2d. at 71. Similarly, in *Timpani*, the court upheld a warrant seeking "any and all records" (such as loan accounts, address books, bank accounts, statements, deposits, cash, etc.) from the defendant's home related to the defendant's alleged "extortionate credit transactions" because each item in the warrant was "plausibly related" to the crime charged. 665 F.2d at 4-5.

Despite the Fourth Amendment particularity requirement, however, there are some instances when a court will uphold the search or seizure of an item not specifically mentioned in the warrant. One such instance is codified by the "plain view" exception to the warrant requirement. *See Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987). A seizure falls within the "plain view" exception if the following three conditions are met: "(1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a 'lawful right of access to the object itself.'" *United States v. Antrim*, 389 F.3d 276, 283 (1st Cir. 2004) (quoting *United States v. Jones*, 187 F.3d 210, 219-21 (1st Cir. 1999)); *see also United States v. Levasseur*, 704 F.Supp. 1158, 1160-67 (D.Mass. 1989) (upholding the seizure of cash not named in a search

warrant where the cash was in plain view; there was probable cause to believe the cash was illegal contraband; the cash was located in a briefcase; and the cash appeared to be stained by red ink from dye packs).

## III.   Analysis

This Court now will address each of Mr. Jeremiah's arguments in support of his motions to suppress, and then turn to his Motion to Return Non-Warrant Items.

### A.   The Whitewood Drive Warrant

Mr. Jeremiah argues that the search of his residence was unreasonable because the Whitewood Drive Warrant fails to establish a sufficient connection between his residence and the illegal activity alleged. (ECF No. 70-1 at 4.) Further, Mr. Jeremiah contends that the provision of the Whitewood Drive Warrant permitting the seizure of "all financial records" in the home relating to the crimes charged is impermissibly broad in light of the Fourth Amendment's prohibition against "general" searches. (ECF No. 5-1 at 32 in 12-mj-335-LDA; ECF No. 70-1.) Finally, Mr. Jeremiah seeks the suppression of $29,730.00 seized during the search of Whitewood Drive because the Whitewood Drive Warrant did not list cash as an item to be seized. (ECF No. 70 at 4-5.)

This Court disagrees with Mr. Jeremiah's argument that the search of Whitewood Drive was, in general, unreasonable. The affidavit from Federal Bureau of Investigation Special Agent Jeffrey Cady sets forth the connection between Mr. Jeremiah's residence and the crimes charged: on one occasion, Mr. Jeremiah met with an alleged co-conspirator, Mr. Anthony Simone, at the Whitewood Drive residence and they discussed the conspiracy and crimes with which Mr. Jeremiah is charged; and, on another occasion, Mr. Simone visited the Whitewood Drive residence to retrieve an envelope that allegedly contained a payment from Mr. Jeremiah to

Mr. Simone. (ECF No. 5-1 at 20 in 12-mj-335-LDA.) Additionally, after receiving the license plate number of a tanker truck allegedly loaned to co-conspirator Mark Lacey to perform the alleged crimes, officers retrieved information about the tanker truck through the Rhode Island Registry of Motor Vehicles. (ECF No. 5-1 at 4-6 in 12-mj-335-LDA.) These records revealed that the tanker truck was a 1984 Ford registered to Mr. Jeremiah's residence on Whitewood Drive. *Id.* at 6. In light of these facts, it was reasonable for the government to believe that probable cause existed to support the Whitewood Drive Warrant and to justify a search of Mr. Jeremiah's residence.

This Court also disagrees with Mr. Jeremiah's assertion that the "all records" provision of the Whitewood Drive Warrant was lacking in the requisite Fourth Amendment particularity. (ECF No. 5-1 at 32-33 in 12-mj-335-LDA.) Both *Ostrowski* and *Timpani* upheld searches of residences based upon language very similar to the language in Attachment B of the Whitewood Drive Warrant. *See id.* In *Ostrowski*, the court upheld an "all records" search of a defendant's home when the defendant was charged with fraudulently mismanaging guardianship funds and where there was probable cause to believe that the defendant made various and multiple purchases for his home with those mismanaged funds. 822 F.Supp.2d at 69-70. In *Timpani,* the court upheld an "all records" warrant provision because the records sought – "any and all records relating to extortionate credit transactions" – were "plausibly related to" the crimes charged and were "not likely" to be "mixed up" or confused with "innocent" items. 665 F.2d at 4-5. Here, the "all records" provision of the Whitewood Drive Warrant authorizes the searching officers to

seize items such as "bank records" and "financial statements" in Mr. Jeremiah's name that *specifically relate* to the crimes charged in the warrant.[1]

The facts alleged in the Whitewood Drive Warrant affidavit – specifically the instances in which Mr. Jeremiah discussed the alleged crimes with, and left payment for, Mr. Simone at the residence, along with the registration of the tanker truck to the Whitewood Drive residence – support the finding that the alleged criminal activity had pervaded Mr. Jeremiah's residence and home life so as to justify the search and seizure of any and all records therein. *See United States v. Falon*, 959 F.2d at 1148. Furthermore, Attachment B does not merely permit the seizure of "all financial records" without further clarification. (ECF No. 5-1 at 32 in 12-mj-335-LDA.) On the contrary, Attachment B contains a list of specific items limiting the scope of the "all records" provision and differentiating for searching officers the nature and types of records sought. *Id.* Because the "all records" provision is limited to records relating to the crimes charged, and because the financial records sought are specifically named in Attachment B, this Court finds that the Whitewood Drive Warrant was sufficiently particular and therefore valid under the Fourth Amendment.

Finally, Mr. Jeremiah argues that the seizure of $29,730.00 from a boot in a closet at the Whitewood Drive residence violated his Fourth Amendment rights because the Whitewood Drive Warrant makes no explicit mention that any cash was to be seized. (ECF No. 70-1 at 5.) The government counters that the seizure of this cash falls within the "plain view" exception to the warrant requirement. (ECF No. 77-1 at 16-17.) In support of its position, the government reasons that since searching officials were permitted to search the entire residence for financial

---

[1] The warrant permits the search and seizure of "[a]ll items and records relating to violations of 18 U.S.C. § 2314 . . . and 2315 . . . including: . . . all financial records" and includes a list of various forms of financial records (such as "bank records, checks, check registers, credit card bills," etc.). (ECF No. 5-1 at 32 in 12-mj-335-LDA.)

records, and since the boot in Mr. Jeremiah's closet is a potential location where records might be stored, the seizure of the cash was appropriate under the "plain view" exception. *Id.* The government also argues that the nexus between the residence and the crimes charged makes it likely that incriminating evidence would be present at Whitewood Drive. *Id.*

This Court finds that the government has the better argument here. Similar to the cash seized in *Levasseur*, which was contained in "unusual locations" in the defendant's home, the cash at issue here was stored in a boot in Mr. Jeremiah's closet. 704 F.Supp. at 1167. The cash was taken from a location where law enforcement had a "lawful right of access" because the Whitewood Drive Warrant permitted the search of Mr. Jeremiah's home for business records, and business records could reasonably have been stored in a boot in Mr. Jeremiah's closet. *See Antrim*, 389 F.3d at 283 (holding that a gun seized in plain view, though not named in the warrant, during a search for narcotics was lawful).

Moreover, the supporting affidavit to the Whitewood Drive Warrant details the information known to the government supporting their "reasonable" probable cause determination that the cash found was evidence of a crime. *See Draper*, 358 U.S. at 313. An alleged co-conspirator was observed visiting and discussing the crimes alleged at the residence; an alleged co-conspirator picked up payments at the residence; and alleged co-conspirators discussed the crimes charged at the residence. (ECF No. 5-1 at 19-21 in 12-mj-335-LDA.) Given this nexus between the alleged conspiracy and the likelihood that incriminating evidence would be found at the Whitewood Drive residence, law enforcement's decision to seize the cash from Mr. Jeremiah's residence was based on "reasonably trustworthy information" and a reasonable belief that the cash seized was evidence of the crimes charged. *See Draper*, 358 U.S. at 313. Although cash was not specified as an object to be seized in the Whitewood Drive

Warrant, this Court finds that its seizure was appropriate under the "plain view" exception. *See Antrim*, 389 F.3d at 283; *see also Levasseur*, 704 F.Supp. at 1166.

In sum, this Court finds that the search of Whitewood Drive was conducted pursuant to a valid warrant and that the seizure of the $29,730.00 in cash was lawful pursuant to the "plain view" exception to the warrant requirement. Therefore, this Court DENIES Defendant's Motion to Suppress and Return Items from Whitewood Drive. (ECF No. 70.)

### B.    The Conduit Street Warrant

Mr. Jeremiah argues that the search of the Conduit Street premises and seizure of certain items from that premises violated the Fourth Amendment. (ECF No. 71-1 at 5.) Specifically, Mr. Jeremiah argues that the Conduit Street Warrant incorrectly described the street numbers of the premises as "13, 25, and 31," when in reality the Conduit Street premises is located at street numbers 13, 23, and 31. *Id.* Mr. Jeremiah also argues that the Conduit Street Warrant fails to designate the units that were subject to search because Attachment A to the Conduit Street Warrant does not parse out the distinct units on the premises. *Id.* Finally, Mr. Jeremiah seeks to suppress approximately 6,425 gallons of cooking oil because oil was not listed in the Conduit Street Warrant. (ECF No. 71-1 at 7-8.)

The Conduit Street Warrant's inclusion of one incorrect street number does not invalidate the warrant. In *Bonner*, the court upheld a search warrant that entirely omitted a street number because the omission was merely "minor [and] technical" and because the physical description of the residence was sufficiently specific such that there was "no risk" that the wrong house would be searched. 808 F.2d at 866-67. Similarly, here, Attachment A to the Conduit Street

10

Warrant offers a physical description of the Conduit Street premises,[2] including a reference to one of the unit's glass doors bearing the number "25." (ECF No. 5-1 at 35 in 12-mj-336-LDA.) Attachment A is also accompanied by an aerial view photograph of the premises. *Id.* at 36. Even with the number "25" mistakenly substituted for the number "23," the Conduit Street Warrant is sufficiently particular and detailed so as to preclude any "reasonable probability" that another location would be wrongly searched. *See id.* at 35-26; *see also Bonner*, 808 F.2d at 866.

Nor does this Court agree that the Conduit Street Warrant's failure to specify the distinct units on the premises should invalidate the warrant. Attachment A does not indicate that officers had any knowledge that the Conduit Street premises was comprised of multiple units. (ECF No. 5-1 at 35-36 in 12-mj-336-LDA.)  In addition, Attachment A states that the Central Falls Code Inspection Office communicated to officials that Conduit Street was indeed one building despite the multiple address numbers connected to the premises. *Id.* at 35. In *Mousli*, the court upheld a search warrant that failed to parse multiple units within a dwelling because officers "made considerable efforts to gather as much information as possible to include in their . . . application for the warrant." 511 F.3d at 12. In this case, as in *Mousli*, officials conducted an extensive

---

[2] Attachment A reads in full:

> The property to be searched is 13, 25, and 31 Conduit St., Central Falls, Rhode Island.  The [Conduit Street] property consists of an industrial warehouse type building occupied by [Defendant] and being used to commit the TARGET OFFENSES.   According to Central Falls Code Inspection Office officials, although 13, 25, and 31 Conduit appear to be different addresses, they are all the same building.  The property is located at the northwest corner of the intersection of Conduit Street and Duchess Way in Central Falls, RI.  The building has a glass door facing Conduit St. labeled "25" and large and small garage bay doors facing Conduit St.  These garage bay doors are the doors through which [the] affiant has seen the tanker truck bearing Rhode Island Commercial License plate "52458" enter and park.   The portion of the building with white siding contains [Defendant's] office and the entry port through which the cooking oil is pumped into the building.

(ECF No. 5-1 at 35 in 12-mj-336-LDA.)

investigation and surveillance and they made "reasonable efforts" to obtain as accurate a description of the premises as possible. *See id.* Here, Attachment A taken together with the Conduit Street Warrant's supporting affidavit reflect the officers' reasonable belief that the Conduit Street property was one singular building and that Mr. Jeremiah had access to and used the building in its entirety. (ECF No. 5-1 at 20-25, 35 in 12-mj-336-LDA.)

Mr. Jeremiah also reiterates the argument that the Conduit Street Warrant was overbroad in that it requested "all business records" from the Conduit Street warehouse. (ECF No. 71-1 at 9.) In light of this Court's previous analysis of the "all business records" language in the Whitewood Drive Warrant – and because the officers had probable cause to believe that substantially more records evidencing a crime would be found at the Conduit Street warehouse (Mr. Jeremiah's place of business and allegedly the principal place of the crimes charged here) than at the Whitewood Drive residence – the business records' provision of the Conduit Street Warrant is sufficiently particular to satisfy the Fourth Amendment. (ECF No. 5-1 at 38-39 in 12-mj-336-LDA.)

Mr. Jeremiah further argues that the seizure of the 1984 Ford tanker trunk bearing Rhode Island vehicle registration 52458 during the Conduit Street search violated the Fourth Amendment because the Conduit Street Warrant failed to specify the exact vehicle to be seized from the premises. (ECF No. 71-1 at 7.) This Court does not agree: Attachment B of the Conduit Street Warrant subjects to seizure any "equipment used to process, store, and transport the stolen oil, *including vehicles.*" (ECF No. 5-1 at 37 in 12-mj-336-LDA (emphasis added).) Additionally, the supporting affidavit attached to the Conduit Street Warrant indicates that law enforcement officials observed the tanker truck drive to several businesses (mainly restaurants and supermarkets) before returning to the Conduit Street location. (ECF No. 5-1 at 14-15 in 12-

12

mj-335-LDA.)  Considering Attachment B together with the supporting affidavit, the seizure of the 1984 Ford tanker truck was proper pursuant to the Conduit Street Warrant. *Id.* at 14-15, 37.

Lastly, Mr. Jeremiah argues that the seizure of approximately 6,425 gallons of "used cooking oil" was unconstitutional both because the Conduit Street Warrant did not particularly name the oil as subject to seizure and because the oil was in a refined state. (ECF No. 71-1 at 11-12.) This Court disagrees. Although used cooking oil itself is not specifically named in the Conduit Street Warrant, the warrant subjects to seizure any "equipment used to process, store, and transport the stolen oil." (ECF No. 5-1 at 37 in 12-mj-336-LDA.) Given that the oil seized was contained within storage equipment subject to seizure, the seizure of the oil was not outside of the scope of the Conduit Street Warrant. *Id.* To read the warrant otherwise would be to read the warrant in a "hypertechnical" rather than "commonsense" manner, *contra* to precedent. *Ventresca*, 380 U.S. at 109. Furthermore, even if this Court did not conclude that the seizure of the oil was proper under the Conduit Street Warrant, seizure of the oil is permissible under the "plain view" exception: officers lawfully accessed the Conduit Street premises pursuant to the Conduit Street Warrant; there was probable cause to believe that the oil was incriminating evidence of the crimes charged; and the oil was in plain view of the officers at the Conduit Street premises. *See Antrim*, 389 F.3d at 283. Additionally, the form in which the oil was seized is irrelevant to this analysis because the Conduit Street Warrant does not limit the items subject to seizure in accordance with the type of oil involved. (ECF No. 5-1 at 37-41 in 12-mj-336-LDA.) And, in the alternative, probable cause to seize the oil does not hinge on the oil's form.

To summarize, this Court finds that the searches and seizures at the Conduit Street premises were constitutional. As such, Defendant's Motion to Suppress and Return Items from Conduit Street is DENIED. (ECF No. 71.)

### C.   Non-Warrant Items

In his Motion to Return Non-Warrant Items, Mr. Jeremiah seeks the return of items that were not listed on the face of the Conduit Street Warrant or the Whitewood Drive Warrant. (ECF No. 68.) Specifically, he seeks return of $29,730.00, approximately 6,400 gallons of reprocessed vegetable oil, and the 1984 Ford tanker truck. *Id.* As explained above, the seizure of those items was lawful. Therefore, this Court DENIES Defendant's Motion to Return Non-Warrant Items. (ECF No. 68.)

## IV.   Motion to Replevin Unconstitutionally Seized Microgen Bank Funds

In his Motion to Replevin Unconstitutionally Seized Microgen Bank Funds, Mr. Jeremiah moves to suppress and seeks return of $31,881.03 that was seized by the Federal Bureau of Investigation from a Microgen Energy account. (ECF No. 72.) Mr. Jeremiah argues that the funds were not subject to forfeiture and the relevant affidavit does not demonstrate probable cause. (ECF No. 72-1.) The government counters that the seizure of the Microgen Energy funds was lawful pursuant to both 18 U.S.C. § 981 and a valid warrant. (ECF No. 75-1 at 3-4.)

Mr. Jeremiah previously filed a Motion to Replevin Unconstitutionally Seized Property seeking return of the Microgen Energy funds, among other things. (ECF No. 45.) On July 30, 2013, this Court heard argument on that motion and it denied it from the bench. (7/30/2003 Text Order.) At this time, this Court does not find any reason to disrupt its earlier ruling that the Microgen Energy funds were properly seized. Thus, Defendant's Motion to Replevin Unconstitutionally Seized Microgen Bank Funds is hereby DENIED. (ECF No. 72.)

## V.    Conclusion

Based on the foregoing, the following four motions are DENIED: (i) Motion to Return Non-Warrant Items (ECF No. 68); (ii) Motion to Suppress and Return Items from Whitewood Drive, Cranston (ECF No. 70); (iii) Motion to Suppress and Return Items from Conduit Street (ECF No. 71); and (iv) Motion to Replevin Unconstitutionally Seized Microgen Bank Funds. (ECF No. 72.)

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

November 19, 2013